UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

UNITED STATES OF AMERICA,

Plaintiff,

v.

TYRONE MCCRAE,

Defendant.

Case No. 6:11-CR-60123-AA

OPINION AND ORDER

Aiken, Chief Judge:

Defendant is charged with one count of failing to register as a sex offender in violation of the Sex Offender Registration and Notification Act (SORNA). Defendant moves to dismiss the indictment on grounds that SORNA does not apply to sex offenders who were convicted of an underlying sex offense prior to the enactment of SORNA on July 27, 2006. The motion is denied.

BACKGROUND

A. Factual History

On August 14, 2003, defendant was convicted of Sex Abuse II and Attempt to Commit Rape

I in Oregon. As a result, defendant is required to register as a sex offender in Oregon every year and update his registration whenever he moves or has a change in employment.

On July 28, 2011, defendant was arrested in Phoenix, Arizona on outstanding Oregon arrest warrants. Defendant admitted that he knew he was wanted in Oregon and that he had been in Arizona since December 2010. Defendant also stated he had not updated his registration as a sex offender in Arizona because of the Oregon warrant.

Defendant was charged by federal complaint with failure to register as a sex offender and was later indicted by the grand jury on October 20, 2011 for the same offense.

B. SORNA's Enactment and Retroactivity Guidelines

In 2006, Congress enacted SORNA as part of the Adam Walsh Child Protection and Safety Act of 2006. See Pub. L. No. 109-248, 120 Stat. 587 (2006), codified at 42 U.S.C. §§ 16901, et seq. SORNA requires that a sex offender register and maintain a current registration in each jurisdiction where he or she resides, is employed, or is a student. 42 U.S.C. § 16913(a). Further, the offender must update the registration within three business days of any change of name, residence, employment, or student status. Id. § 16913(c). It is a crime for a person required to register under SORNA to travel in interstate or foreign commerce and knowingly fail to register or update a registration. 18 U.S.C. § 2250(a). Failure to register as a sex offender is a felony punishable by up to ten years of imprisonment. Id.

SORNA's registration requirements do not apply retroactively "to pre-Act offenders until the Attorney General specifies that they do apply." Reynolds v. United States, 132 S. Ct. 975, 978 (2012). Instead, SORNA grants the Attorney General "the authority to specify the applicability of the requirements of [SORNA] to sex offenders" convicted before SORNA's enactment and to

"prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply" with the initial registration requirements. 42 U.S.C. § 16913(d). Further, the Attorney General must "issue guidelines and regulations to interpret and implement" SORNA. Id. § 16912(b).

On February 28, 2007, then-Attorney General Alberto Gonzales issued an Interim Rule rendering SORNA retroactively applicable to "all sex offenders . . . regardless of when they were convicted." *Applicability of the Sex Offender Registration and Notifications Act*, 72 Fed. Reg. 8894, 8896 (Feb. 28, 2007); see also 28 C.F.R. § 72.3 (2007). Under the "good cause" exception under the Administrative Procedures Act (APA), the Attorney General made the Interim Rule effective immediately, without the APA's usual notice and comment period. 72 Fed. Reg. at 8896-97.

Approximately three months later, on May 30, 2007, the Attorney General issued proposed "Sentencing, Monitoring, Apprehending, Registering, and Tracking" (SMART) guidelines. *National Guidelines for Sex Offender Registration and Notification*, 72 Fed. Reg. 30,210 (May 30, 2007). The stated purpose of the proposed SMART guidelines was to "interpret and implement SORNA" pursuant to the "statutory directive" of § 16912(b), and they provided that "SORNA's requirements apply to all sex offenders, including those whose convictions predate the enactment of the Act." Id. at 30,210, 30,212. Comments on the proposed SMART guidelines were accepted through August 1, 2007. Id. at 30,210.

On July 2, 2008, the Attorney General issued the final SMART guidelines. *National Guidelines for Sex Offender Registration and Notification*, 73 Fed. Reg. 38,030 (July 2, 2008). The final SMART guidelines state that "SORNA's requirements took effect when SORNA was enacted on July 27, 2006, and they have applied since that time to all sex offenders, including those whose

convictions predate SORNA's enactment." Id. at 38,046. The final SMART guidelines took effect on August 1, 2008.

In 2010, the Ninth Circuit held that the Interim Rule failed to comply with the notice and comment requirements of the APA, thus rendering the Interim Rule invalid. United States v. Valverde, 628 F.3d 1159, 1167-68 (9th Cir. 2010). The Ninth Circuit stated that the final SMART guidelines complied with the APA, though they were not applicable to that defendant. Id. at 1164.

On December 29, 2010, the Attorney General responded to comments regarding the Interim Rule's retroactivity provision and issued a rule "finalizing" the Interim Rule. *Applicability of the Sex Offender Registration and Notification Act*, 75 Fed. Reg. 81,849-52 (Dec. 29, 2010). The Finalized Interim Rule became effective on January 28, 2011.

DISCUSSION

Defendant argues that the retroactivity provision of the final SMART guidelines, the source of retroactivity in this case, exceeded congressional authority and did not comply with the APA.[1] Specifically, defendant argues that the final SMART guidelines were promulgated pursuant to 42 U.S.C. § 16912(b), which authorizes the Attorney General to issue only interpretative guidance and is not an express delegation of power to establish a substantive rule of retroactivity. Defendant contends that any retroactivity rule promulgated under § 16912(b) is ineffective, because § 16913(d) is the only provision that grants the Attorney General the power to issue substantive rules establishing retroactivity. As a result, defendant argues that the Attorney General failed to provide adequate notice or opportunity to comment, failed to consider the objections to retroactivity, and

[1]The government concedes that the final SMART guidelines provide the only basis for retroactivity, as the Ninth Circuit held the Interim Rule invalid and the finalization of the Interim Rule became effective after defendant's alleged failure to register in 2010.

impermissibly relied on the invalid Interim Rule. The government responds that Congress delegated to the Attorney General the authority to determine retroactivity, and on August 1, 2008, the Attorney General did so through issuance of the final SMART guidelines applying SORNA retroactively. As such, the government maintains that SORNA applies to defendant, as he traveled to Arizona in 2010 and failed to update his sex offender registration in violation of 18 U.S.C. § 2250(a).

As found by another judge in this district, the Ninth Circuit recognized the validity of the final SMART guidelines and their effectiveness as of August 1, 2008. See United States v. Mattix, 2011 WL 1792144 (D. Or. May 10, 2011). Specifically, Valverde found that "[t]he final SMART guidelines complied with the APA's procedural requirements" but were not in effect when the defendant allegedly failed to register. Valverde, 628 F.3d at 1164.Thus, the Ninth Circuit has ruled that the final SMART guidelines complied with the APA. See Mattix, 2011 WL 1792144 at *4 .

Defendant maintains that the Ninth Circuit's conclusion was dicta, as the SMART guidelines were not applicable in that case and the Ninth Circuit did not address the arguments raised here. Even if Valverde's conclusion about the final SMART guidelines was dicta, I disagree with defendant's arguments and instead find persuasive the Sixth Circuit's opinion in United States v. Stevenson, 676 F.3d 557 (6th Cir. 2012). As defendant does in this case, the defendants there argued that the final SMART guidelines did not establish a valid rule of retroactivity, because § 16912(b) "authorizes the Attorney General to issue only interpretative guidance on SORNA, not substantive rules." Id. at 563. The Sixth Circuit rejected this argument, and I agree with its analysis.

Section 16912(b) of SORNA directs the Attorney General to "issue guidelines and regulations to interpret and implement this subchapter," while § 16913(d) grants the Attorney General the "authority to specify the applicability of the requirements of this subchapter to sex

offenders convicted before the enactment of this chapter . . . and to prescribe rules for the registration of any such sex offenders . . . ." 42 U.S.C. §§ 16912(b), 16913(d). The Sixth Circuit found that the SMART guidelines "adequately make reference to both § 16912(b) and § 16913(d) for legislative authority," and that even if the SMART guidelines were promulgated solely under § 16912(b), the Attorney General "still had the authority" to establish retroactivity, "because § 16912(b) incorporates by reference § 16913(d)." Stevenson, 676 F.3d at 563-64.

Specifically, the Sixth Circuit held that "§ 16912(b) authorizes the Attorney General to make both interpretive and substantive rules because it unambiguously permits the Attorney General to make rules regarding both the interpretation *and* implementation of the sections therein," and "[s]ubstantive rules are rules that *implement* the statute." Id. at 564 (emphasis in original; internal quotation marks and citation omitted). The court also noted that § 16912(b) " unambiguously instructs the Attorney General to make the necessary regulations to 'implement this subchapter,'" and that § 16913(d) "indisputably falls within that subchapter." Id. at 564 (quoting 42 U.S.C. §16912(b)). Thus, examining the guidelines in the context of "the enabling statute as a whole, not any particular provision in isolation," the Sixth Circuit found that it could "hardly fault the agency for citing the section giving it broad authorization when issuing substantive rules including the specific one expressly authorized in another section of the exact same statute." Id. at 564.

I agree with this analysis. Not only do the SMART guidelines cite § 16913(d) as the authority to establish retroactivity, 72 Fed. Reg. at 30,212, the authority to implement SORNA under § 16912(b) expressly incorporates § 16913(d) and necessarily includes the authority to establish retroactivity. Thus, "§ 16912(b) unambiguously gives the Attorney General the authority to make substantive rules on how to implement SORNA." Stevenson, 676 F.3d at 564.

Defendant nevertheless asserts that the Attorney General's response to objections regarding retroactivity, stating that he was unable to "second guess" legislative policy, reflects that the Attorney General treated the SMART guidelines as interpretive rather than substantive rules. Defendant relies on the following statement made in response to comments against retroactivity:

> The comments received do not establish that this legislative judgment is wrong, and in any event such a premise could not be accepted in the formulation of guidelines whose objective is to "interpret and implement" SORNA's standards, see SORNA § 112(b), not to second-guess the legislative policies they embody.

73 Fed. Reg. at 38,036. However, the Attorney General also stated:

> [T]he effects of SORNA's registration and notification requirements on sex offenders are much the same regardless of whether their sex offense convictions occurred before or after SORNA's enactment or its implementation in a particular jurisdiction. Likewise, the public safety concerns presented by sex offenders are much the same, regardless of when they were convicted. The SORNA standards reflect a legislative judgment that SORNA's registration and notification requirements, even if disagreeable from the standpoint of sex offenders who are subject to them, are justified by the resulting benefits in promoting public safety.

Id. at 38,035-36. Thus, while the Attorney General rejected the argument that he should implement SORNA in a manner inconsistent with Congressional intent, he also considered and rejected the arguments against retroactivity. See also Stevenson, 676 F.3d at 565, n.7 (rejecting defendants' argument that the Attorney General's responses "demonstrated that he felt unable to address retroactivity at all in guidelines promulgated under § 16912(b)"). Therefore, the Attorney General established retroactivity pursuant to an express delegation of power and provided notice and the opportunity for comment.

Defendant next argues that the Attorney General impermissibly relied on the Interim Rule when promulgating the SMART guidelines and failed to invoke express retroactive rulemaking. Defendant relies on the statement in the proposed SMART guidelines that the Attorney General had

"so provided" for such rulemaking by virtue of the Interim Rule. See 72 Fed. Reg. at 30,212. Defendant emphasizes that the Ninth Circuit found the Interim Rule invalid for lack of adequate notice and comment, and that the SMART guidelines are therefore similarly void.

I agree with the government that defendant reads the SMART guidelines too narrowly. First, the guidelines referenced and relied on the Attorney General's statutory authority to implement SORNA and establish retroactivity. Id. at 30,210, 30,212 (citing 42 U.S.C. §§ 16912(b), 16913(d)). Second, as discussed above, the final SMART guidelines considered and responded to substantive comments concerning the retroactive application of SORNA to previously convicted sex offenders and confirmed that SORNA applies retroactively to "all sex offenders, including those whose convictions predate SORNA's enactment." 73 Fed. Reg. at 38,035-36, 38,046; see also 72 Fed. Reg. at 30,212-13 (discussing retroactivity). Thus, defendant is incorrect that the SMART guidelines simply refer back to the Interim Rule. See Stevenson, 676 F.3d at 563 (noting that "in the discussion of retroactivity, the proposed SMART guidelines do not merely refer back to the Interim Rule, as the defendants claim").

Finally, even if defendant could establish that the final guidelines did not comply with the APA, he cannot establish prejudice as the Attorney General's mistake, if any, "clearly had no bearing on the procedure used or the substance of decision reached." Riverbend Farms, Inc. v. Madigan, 958 F.2d 1479, 1487 (9th Cir. 1992) (internal quotation marks and citation omitted). Defendant cites no evidence suggesting that sex offenders whose convictions predated SORNA were unable to comment or object to the retroactive application of SORNA, or that the Attorney General's decision would have been different. See 73 Fed. Reg. 38,030 (noting that "[a]pproximately 275 comments were received on the proposed guidelines" and that the Department of Justice "considered them

carefully"); see also id. at 38,035-36 (considering and rejecting arguments that retroactive application is unconstitutional or "unfair" because the SORNA requirements are "non-punitive regulatory measures"). Thus, any error committed by the Attorney General was not prejudicial. Stevenson, 676 F.3d at 565. As emphasized by the Sixth Circuit, the proposed SMART guidelines "unequivocally stated that the SORNA would apply retroactively," and the "Attorney General received and addressed numerous comments from the public on the issue of retroactivity." Id.

In sum, as was the Sixth Circuit, I am "confident that the Attorney General's initial citation to § 16912(b), even if a technical violation of the APA's notice requirement, 'clearly had no bearing on the procedure used or the substance of decision reached.'" Id. (quoting Riverbend Farms, 958 F.2d at 1487).

CONCLUSION

Accordingly, defendant's arguments are rejected, and his motion to dismiss the indictment (doc. 18) is DENIED.

IT IS SO ORDERED.

DATED this 13 day of July, 2012.

Ann Aiken
United States District Judge